# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENNY THOMPSON,

    Plaintiff,

  v.

RYDER SYSTEM, INC.,

    Defendant.

_____/

CASE NO.: _____

**PLAINTIFF DEMANDS A
TRIAL BY JURY**

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff, PENNY THOMPSON (hereinafter referred to as "Plaintiff" and/or "Ms. Thompson"),

through her counsel, Derek Smith Law Group, PLLC, hereby complains of Defendant, RYDER

SYSTEM, INC. (hereinafter referred to as "Defendant" and/or "Ryder"), and alleges as follows:

## <u>NATURE OF CASE</u>

1. Plaintiff brings this action to recover damages against Defendant for alleged gender
   discrimination, gender wage discrimination, age discrimination, and retaliation under the Title
   VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* ("Title VII"); the Florida Civil
   Rights Act of 1992, Section 760.10 *et seq.* ("FCRA"); the Age Discrimination in Employment
   Act 29 U.S.C. §621 *et seq.* ("ADEA"); the Family Medical Leave Act, 29 U.S.C. § § 2601–
   2654 ("FMLA"); and the Equal Pay Act of 1963 ("EPA"), 52 Stat. 1062, as amended, 29
   U.S.C. §206(d) *et seq.*.

2. This action seeks damages to redress the injuries Plaintiff has suffered as a result of being
   discriminated against based on her gender and age, subjected to gender wage discrimination,

1

denied family medical leave, and retaliated against by her employer solely for complaining of the ongoing discrimination.

## JURISDICTION AND VENUE

3. This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"); Equal Pay Act of 1963, 29 U.S.C. §206(d) *et seq*. ("EPA"); Age Discrimination in Employment Act 29 U.S.C. §621 et seq. ("ADEA"); the Family Medical Leave Act, 29 U.S.C. § § 2601–2654 ("FMLA"); and the Florida Civil Rights Act of 1992, Section 760.10 *et seq*. ("FCRA").

4. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII, the ADEA, the FMLA, and the EPA.

5. This Court has jurisdiction of the state law claims herein pursuant to 29 U.S.C. § 1367, as this action involves state law causes of action arising from the same case or controversy as the federal claims herein.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon the fact Defendant is and was located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

7. Plaintiff was employed by Defendant within Miami-Dade County, Florida.

## PROCEDURAL REQUIREMENTS

8. Plaintiff has complied with all statutory prerequisites to file this action.

9. On or around December 29, 2020, Plaintiff dual filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge number 15D-2021-00217, and the Florida Commission on Human Relations ("FCHR"), Charge number 2021-27915.

10. An EEOC filing automatically operates as a FCHR filing.

11. On or around July 2, 2021, the FCHR issued its Notice of Determination, and this action is being commenced.

12. This action is being commenced within ninety (90) days of receipt of the FCHR's Notice of Determination.

13. This action is being commenced more than one hundred eighty (180) days since the inception of Plaintiff's admirative action against the Defendant.

## **PARTIES**

14. At all times material, Plaintiff is an individual woman over the age of 40 (YOB: 1958) who resides in the State of Florida.

15. At all times material, Defendant is a Florida Profit Corporation duly existing by the virtue and laws of the State of Florida with offices in Miami-Dade County, Florida.

16. As of 2018, Defendant's Employee/Manager/Supervisor Pedro Perez (hereinafter referred to as "PEREZ") is an individual man and was Plaintiff's direct supervisor, the Senior Manager of Real Estate.

17. As of 2018, PEREZ held supervisory authority over Plaintiff, controlling various aspects of her employment, including but not limited to the power to hire and fire Plaintiff and the ability to direct her work.

18. At all times material, Defendant's Employee/Manager/Supervisor Josh Haber (hereinafter referred to as "HABER") is an individual man and was Plaintiff's second-line supervisor, the Director of Real Estate.

19. At of 2018, HABER held supervisory authority over Plaintiff, controlling various aspects of her employment, including but not limited to the power to hire and fire Plaintiff and the ability to direct her work.

20. As of 2018, Defendant's Employee/Manager/Supervisor Nanci Tellam (hereinafter referred to as "TELLAM") is an individual man and was Plaintiff's third-line supervisor, the Vice President of Real Estate, Environmental Services, & Fuel Services.

21. At all times material, TELLAM held supervisory authority over Plaintiff, controlling various aspects of her employment, including but not limited to the power to hire and fire Plaintiff and the ability to direct her work.

## FACTUAL ALLEGATIONS

22. Around April 2, 1989, Ms. Thompson began her employment with Defendant.

23. From 2019 until her eventual constructive discharge from Defendant, by and through its agents PEREZ, HABER, and TELLAM, favored young and/or male employees by disproportionately targeting female employees over the age of 40, including Ms. Thompson, for reduction-in-force and outsourcing employees over the age of 40.

24. By means of example and not meant to be an exhaustive list, PEREZ, TELLAM, and HABER regularly favored young male employees by providing them with privileges and benefits not granted to other employees, including Ms. Thompson.

25. By means of example and not meant to be an exhaustive list, in early 2019, Defendant promised Plaintiff that she would be assigned the West Region. Accordingly, Ms. Thompson began preparing research and portfolios for the West Region assignment.

26. After Plaintiff had begun her work on the West Region, Defendant, by and through PEREZ, informed Plaintiff that Rafeal Write (hereinafter referred to as "Write") (male, under age 40), a new hire, would receive the assignment of the West Region. PEREZ then ordered Plaintiff to surrender all research, strategies, and portfolios that she had personally prepared to Write.

27. Defendant, by and through the conduct of its agent PEREZ, discriminated against Plaintiff Thompson because of her sex/gender and age by retracting Plaintiff's promised employment opportunity, the West Region assignment, in favor of a newly hired male employee, Write.

28. By further means of example and not meant to be an exhaustive list, in or around May 2019, Write requested and received a temporary transfer to Defendant's Tampa location from PEREZ and TELLAM in order to care for his ailing mother.

29. In contrast, on or around July 29, 2019, Ms. Thompson, who held the same title as Write, similarly requested a temporary transfer to the Tampa location to care for her husband who also required medical care.

30. In response, PEREZ and TELLAM denied Ms. Thompsons's request and provided her no other explanation other than that they "did not want to set a precedence" for such transfers.

31. Notably, Write was employed with Defendant for six months before he was granted his requested transfer to Tampa. Ms. Thompson, on the other hand, was denied her request for a transfer after thirty years of exemplary performance with Defendant.

32. Around April 2020, because of her denied transfer, Ms. Thompson complained, as per Defendant's policy, to her managers/supervisors HABER, PEREZ, and TELLAM regarding

their suspected age and gender discrimination and denial of leave pursuant to the Family

Medical Leave Act, before again renewing her request for a transfer to care for her husband.

33. In response, HABER told Ms. Thompson that it was in "**poor taste**" to complain about

employment during a pandemic. To date, Ms. Thompson is unaware of any steps or actions

taken in response to her complaints or multiple requests for family medical leave.

34. Shortly after her complaints to her managers, PEREZ, TELLAM, and HABER began

retaliating against Ms. Thompson for her complaints of age and gender discrimination and

denial of leave.

35. By means of example and not meant to be an exhaustive list, in the days after her complaints

until her eventual constructive discharge, PEREZ retaliated against Ms. Thompson by

canceling and refusing to perform one-on-one meetings with Ms. Thompson, despite such

meetings regularly occurring before her complaints and requests for family medical leave.

36. Furthermore, PEREZ refused to invite Ms. Thompson to work meetings, isolated her from

her colleagues, and began harshly criticizing and harassing Ms. Thompson about her work

product.

37. By further means of example and not meant to be an exhaustive list, Defendant, by and

through its agent PEREZ, regularly invited younger, male colleagues to work-related

lunches. The lunch invitations were not open to other employees, including Ms. Thompson.

38. Defendant's actions, by and through its agents, evinces Defendant's disparate treatment of its

female employees and employees over the age of 40.

39. Around April 2, 2020, Defendant informed Ms. Thompson of its intention to reduce her

salary by 20% in May 2020 and 30% in June 2020 because of the COVID-19 pandemic.

40. In or about April 2020, Defendant accordingly reduced Ms. Thompson's salary by the proposed reductions.

41. In or about April 2020, Ms. Thompson became aware that her male colleagues with the same title, manager, and department, including Thomas Moore, only received a 10% reduction in salary as a result of the same reduction in salary.

42. Ms. Thompson and her male colleagues were responsible for performing the same job functions and assignments. Yet, Ms. Thompson's salary was decreased at a steeper rate than her male colleagues as described above.

43. Around May 2020, as per Defendant's policy, Ms. Thompson again expressly complained to PEREZ of his retaliation against her, as well as the disparity in salary reductions between men and women.

44. Defendant, by and through the actions of its agent/manager/supervisor PEREZ, did not deny the disparity in salary reductions, but rather responded, "**life isn't fair.**"

45. Defendant reduced Ms. Thompson's salary more than her male colleagues because of her gender and age.

46. Frustrated with PEREZ's dismissal of her complaints, Ms. Thompson then complained to Human Resources Representative Stephanie Hennouni regarding the disparate reductions in salary.

47. In response, Defendant's Human Resources Representative informed Plaintiff that it could not discuss the reductions in salary with her, but that this conversation was more appropriate for her manager PEREZ. When Ms. Thompson explained that she had already attempted to speak with PEREZ about the matter, Human Resources reiterated its refusal to discuss the

7

reductions with her. No other steps or actions were taken to address Ms. Thompson's complaints of gender and age discrimination.

48. Immediately following her meeting with Human Resources, Plaintiff attempted to escalate her complaints to Bob Fatovic, her third-line supervisor and the boss of PEREZ, HABER, and TELLAM, about the discrimination, retaliation, and denial of family medical leave she was facing.

49. However, Defendant, by and through the actions of its agents PEREZ and HABER, warned Ms. Thompson to not elevate any of her harassment or discrimination complaints to Fatovic again. Plaintiff Thompson understood this as a direct threat of further retaliation if she pursued her complaints further.

50. HABER and PEREZ's threat, combined with Ms. Thompson's knowledge of previous employees who were retaliated against by Defendant after reporting harassment or discrimination, led Ms. Thompson to reasonably conclude that Defendant would retaliate against her if she continued to raise her complaints and request for leave.

51. As a result of the Defendant's actions by and through its agents, Ms. Thompson reasonably feared further retaliation if she continued to voice her complaints.

52. Beginning in the summer of 2020, due to Defendant's relentless age and gender discrimination, harassment, and retaliation, Plaintiff began experiencing physical manifestation of her emotional distress, including restlessness, irritability, difficulties sleeping, and anxiety. Further, Plaintiff also began seeking treatment for physical ailments, including back and neck pains caused by both her stress and long commutes from Defendant's Miami location to her ailing husband in Tampa, and was therefore the result of the denial of her family medical leave.

53. During this time, Plaintiff's husband's health continued to deteriorate, and Plaintiff was required to drive between Miami and Tampa every weekend to care for her husband and also maintain her position with Defendant.

54. Around July 31, 2020, because of the severe emotional and physical distress caused by Defendant, including the ongoing denial of her family medical leave, Ms. Thompson involuntarily resigned from her position with Defendant.

55. Ms. Thompson claims constructive discharge.

56. That as a result of Defendant's conduct and comments, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

57. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed. Plaintiff now suffers from severe anxiety and depression as a result of Defendant's harassment, discrimination, retaliation, and denial of family medical leave.

58. As a result of Defendant's discriminatory and harassing treatment of Plaintiff, Plaintiff suffered and continues to suffer severe emotional distress.

59. Defendant, by and through its owners and managers, unlawfully constructively discharged Ms. Thompson because of her repeated requests for family medical leave and because of her sex/gender and age.

60. The above are just some examples, of some of the discrimination, harassment, and retaliation to which Defendant subjected Plaintiff.

61. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

62. Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

63. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

64. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendant.

**COUNT ONE**
*Sex/Gender Discrimination*
*(Disparate Treatment) in Violation of TITLE VII*

65. Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 72, and further alleges as follows.

66. Title VII states in relevant parts as follows: "§ 2000e-2. *[Section 703]* (a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

67. Defendant is prohibited under Title VII from discriminating against Plaintiff because of her gender/sex with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

68. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*, by discriminating against Plaintiff because of her sex/gender.

69. Defendant, by and through the conduct of its agent PEREZ, discriminated against the Plaintiff because of her sex/gender by retracting Plaintiff's promised employment opportunity, the West

Region assignment, in favor of a newly hired male employee and ordering her to turn over personally prepared portfolios, research, and strategies to the same employee.

70. Defendant, by and through the conduct of its agents PEREZ, HABER, and TELLAM, treated Plaintiff differently than similarly situated employees, including Rafael Write, because of her sex/gender by denying Plaintiff's request to transfer to Tampa to care for her ailing husband while permitting a male colleague holding the same title, Write, to do the same.

71. By means of example and not an exhaustive list, Defendant, by and through the conduct of its agents discriminated against the Plaintiff based on her sex/gender as described above and including canceling/rescheduling one-on-one meetings requested by Plaintiff to discuss the discrimination she experienced; declining to invite Plaintiff and other female employees to lunch and/or work functions; responding to Plaintiff's complaints with hostility; permitting Plaintiff to endure escalating discrimination despite her complaints; intentionally reducing Plaintiff's pay more than her male colleagues holding the same title; and causing Plaintiff's wrongful constructive discharge.

72. The Defendant's disparate treatment was because of Plaintiff's sex/gender.

73. Defendant treated Plaintiff less favorably than similarly situated employees outside her protected class.

74. In subjecting Plaintiff to adverse employment action on the basis of her sex/gender, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

75. Defendant violated Title VII by unlawfully discharging and discriminating against Plaintiff based her gender/sex, of which the Defendant was fully aware of.

76. As a result of Defendant's violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

77. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under Title VII.  Accordingly, Plaintiff also requests punitive damages as authorized by Title VII.

78. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under Title VII.

79. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

80. Plaintiff Thompson has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a.  Adjudge and decree that Defendant has violated Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.  Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.  Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.  Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT TWO
### Sex/Gender Discrimination
### (Hostile Work Environment) in Violation of TITLE VII

81. Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 72, and further alleges as follows.

82. Title VII states in relevant parts as follows: "§ 2000e-2. *[Section 703]* (a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

83. Here, Defendant's conduct occurred because of Plaintiff's legally protected characteristic, her sex/gender, and the conduct was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile or abusive.

84. Defendant, by and through the conduct of its agents, discriminated against Plaintiff based on her sex/gender, including by canceling/rescheduling one-on-one meetings requested by Plaintiff to discuss the discrimination she experienced; declining to invite Plaintiff and other female employees to lunch and/or work functions; responding to Plaintiff's complaints with hostility; denying Plaintiff a transfer that it permitted for Plaintiff's male colleague immediately prior; permitting Plaintiff to endure escalating discrimination despite her complaints; intentionally reducing Plaintiff's pay more than her male colleagues holding the same title; and causing Plaintiff's wrongful constructive discharge.

85. The harassing treatment of Plaintiff included, but was not limited to, ignoring Plaintiff's requests for support while providing such support for her male colleagues, refusing to promote Plaintiff despite her exceptional work performance as evidenced by multiple merit-based promotions and pay increases, and wrongfully constructively discharging Plaintiff after her complaints of sex discrimination and gender wage discrimination.

86. The harassing actions of Defendant against Plaintiff as described and set forth above constitute an adverse employment action for purposes of Title VII.

87. In subjecting Plaintiff to adverse employment action on the basis of her sex/gender, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

88. The harassing conduct was directly connected to Ms. Thompson's sex/gender.

89. Defendant's leadership, namely PEREZ, made numerous comments and conduct related to Ms. Thompson's sex/gender.

90. When Ms. Thompson voiced her objections to this harassing and discriminatory treatment, not only did Defendant fail to address her concerns, but they also continued the pattern of discrimination by making further discriminatory comments and conduct.

91. Plaintiff did not welcome Defendant's discriminatory conduct or comments.

92. Defendant abused its supervisory authority over Plaintiff by creating a hostile work environment. A reasonable person subjected to Ms. Thompson's working environment would believe Defendant's conduct was severe or pervasive enough to have altered the terms and conditions of employment and render the working environment intimidating, hostile or abusive.

93. As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

94. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

95. Defendant Ryder's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

96. Conduct of Defendant Ryder and/or its agents deprived Plaintiff of her statutory rights guaranteed under Title VII.

97. Plaintiff Thompson has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree that Defendant has violated Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d. Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT THREE
### *Retaliation in Violation of TITLE VII*

98. Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 72, and further alleges as follows.

99. Title VII prohibits employment discrimination against an individual for opposing or complaining about unlawful discrimination and/or harassment.

100. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

101. Plaintiff opposed Defendant's discriminatory treatment by complaining to Defendant's agents/supervisors PEREZ, HABER, and TELLAM about the unlawful harassment and discrimination she was experiencing.

102. At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that violations of Title VII by Defendant's employees had occurred.

103. At all times relevant, the unlawful discrimination by Defendant's employees against Plaintiff in the terms and conditions of her employment because she opposed a practice made unlawful by Title VII which would not have occurred but for that opposition.

16

104. At all material times, the employers exhibiting discriminatory and harassing conduct against Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

105. Following Plaintiff's opposition to PEREZ, HABER, and TELLAM's conduct and her numerous complaints to Defendant, the hostility increased dramatically.

106. Defendant's agents/supervisors PEREZ, HABER, and TELLAM retaliated against Plaintiff, including by continuing to subject Plaintiff to harassment and discrimination; harshly criticizing Plaintiff's work performance; canceling/rescheduling one-on-one meetings with Plaintiff to discuss her complaints; reducing her pay beyond the reductions of her peers; and ultimately causing Plaintiff's constructive discharge after she complained of and reported the discrimination and harassment.

107. Plaintiff opposed discriminatory and harassing conduct by Defendant which is prohibited by Title VII when she complained to Defendant's agents PEREZ, HABER, and Human Resources about the discrimination and harassment as described and set forth above.

108. Plaintiff's complaints involved Defendant's unlawful, discriminatory, and harassing actions and therefore constituted protected activity under Title VII.

109. Plaintiff complained of Defendant's discrimination and harassment of her and other female employees.

110. After expressing her opposition to the unlawful discriminatory conduct, Defendant retaliated against Plaintiff by among other things, wrongfully and unlawfully constructively discharging Plaintiff's employment.

111. The adverse employment actions by Defendant, as described and set forth above, were the result of Plaintiff's opposition to the discriminatory and harassing conduct to which she was subjected to in violation of Title VII.

112. The discriminatory actions of Defendant against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of Title VII.

113. Defendant's retaliation would not have occurred but for Plaintiff's participation in a protected activity.

114. In subjecting Plaintiff to adverse employment action because of her sex/gender, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

115. As a result of Defendant's violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

116. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

117. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

118. Plaintiff has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree that Defendant has violated Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages,

18

employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.  Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.  Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT FOUR
### *Age Discrimination in Violation of ADEA*

119. Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 72, and further alleges as follows.

120. Plaintiff is an individual woman over the age of 40 (YOB: 1958) and is therefore protected against discrimination under the ADEA.

121. Defendant treated Plaintiff less favorably than similarly situated employees outside her protected class.

122. The ADEA (29 U.S.C. 626) provides that it shall be unlawful for an employer:

"(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify their employees in any way which would deprive or tend

19

to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age."

123. Defendant, by and through the conduct of its agent PEREZ, discriminated against Plaintiff based on her age by promising Plaintiff the assignment to West Region until a same-titled younger employee, Write, was hired. PEREZ then ordered Plaintiff to surrender all personally prepared research, strategies, and portfolios to Write.

124. Defendant, by and through the conduct of its agents PEREZ, HABER, and TELLAM, treated Plaintiff differently than her younger, similarly situated colleagues, including Rafael Write, because of her age by denying Plaintiff's request to transfer to Tampa to care for her ailing husband while permitting a younger colleague holding the same title, namely Write, to do the same.

125. Defendant, by and through the conduct of its agents, discriminated against Plaintiff based on her age by including canceling/rescheduling one-on-one meetings requested by Plaintiff to discuss the discrimination she experienced; responding to Plaintiff's complaints with hostility; permitting Plaintiff to endure escalating discrimination despite her complaints; and causing Plaintiff's wrongful constructive discharge.

126. The Defendant's disparate treatment was directly connected to Plaintiff's age.

127. Defendant treated Plaintiff less favorably than similarly situated employees outside her protected class.

128. The discriminatory actions of Defendant against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of ADEA.

129. In subjecting Plaintiff to adverse employment action because of her age, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

130. Upon information and belief, Plaintiff was replaced by a younger employee.

131. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

132. Conduct of Defendant through by and through its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

133. Plaintiff Thompson has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree that Defendant has violated ADEA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d. Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT FIVE
### *Retaliation in Violation of ADEA*

134. Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 72, and further alleges as follows.

135. The ADEA (29 U.S.C. 623(d)) states: "It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual … because such individual … has opposed any practice made unlawful by this section, or because such individual … has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."

136. Defendant discriminated against Plaintiff due to her age when Defendant, including but not limited to, refused to transfer Plaintiff, failed to equally compensate Plaintiff as her similarly situated coworkers, harshly and baselessly criticized Plaintiff's work product, and caused Plaintiff's constructive discharge, all on the basis of her age.

137. At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that violations of the ADEA by Defendant's agents had occurred.

138. Plaintiff engaged in a protected activity when she complained and opposed the age discrimination to HABER and PEREZ.

139. At all times relevant, the unlawful discrimination by Defendant's agents/supervisors against Plaintiff in the terms and conditions of her employment occurred because she opposed a practice made unlawful by the ADEA and would not have occurred but for that opposition.

140. At all material times, the Defendant's agents/supervisors exhibiting discriminatory conduct against Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment.

141. Defendant intentionally retaliated against Plaintiff by continuing to discriminate against her, harass her, and ultimately constructively discharging her for complaining of actions by Defendant made unlawful under the ADEA.

142. Defendant's retaliation would not have occurred but for Plaintiff's participation in a protected activity.

143. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

144. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

145. Plaintiff has been damaged by the illegal conduct of Defendant.

**COUNT SIX**
*Unlawful Gender Wage Discrimination*
*in Violation of the Equal Pay Act of 1963*

146. Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 72, and further alleges as follows.

147. 29 U.S.C. §§ 206(d)(1) provides: "No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not,

23

in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

148. Defendant's acts or omissions, by and through its agents/supervisors, resulted in unfairly paying Plaintiff a base salary lower than her male counterpart employed by Defendant in the same or substantially similar role, for the same or substantially similar work with the same required skill, effort, and responsibility, violating 29 U.S.C. §§ 206(d)(1).

149. Specifically, Defendant reduced Plaintiff's salary by 20% in May 2020 and 30% in June 2020, yet only reduced the salaries of its male colleagues (holding the same title as Plaintiff) by 10%.

150. When Plaintiff voiced her objections to the gender wage discrimination, Defendant, through its agent PEREZ, acknowledged its conduct by telling the Plaintiff, "Life isn't fair," and otherwise failed to address her concerns.

151. Defendant discriminated against Plaintiff passed on her sex/gender in refusing to compensate Plaintiff equally for the same or similar work performed by her and her male colleagues.

152. Defendant's unlawful actions were willful.

153. Defendant's acts or omissions resulting in its paying Plaintiff less than her male counterpart were not in good faith, pursuant to a lawful seniority or merit-based scheme, or based on any other legitimate, non-discriminatory grounds.

154. As a result of Defendant's violations of the EPA, Plaintiff has suffered damages, including, but not limited to: past and future wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

155. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed

under federal law.

156. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

157. Plaintiff has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree that Defendant has violated EPA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d. Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

<u>**COUNT SEVEN**</u>
*Retaliation in Violation of the Equal Pay Act of 1963*

158. Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 72, and further alleges as follows.

159. 29 U.S.C. §215(a)(3) makes it unlawful to "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has

testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee…"

160. The EPA prohibits Defendant from engaging in retaliatory acts against Plaintiff based on her participation in a protected activity under the EPA.

161. Plaintiff engaged in protected activity by complaining of the wage discrimination amf requesting to be paid equal to her male colleague to HABER, PEREZ, and Human Resources.

162. In response to statutorily protected activity, Defendant, through its agents/supervisors, adopted a pattern of subjecting Plaintiff to a series of retaliatory adverse employment actions, including, but not limited to, the following: canceling/rescheduling one-on-one meetings requested by Plaintiff to discuss the discrimination she experienced; harshly criticizing Plaintiff's performance, reducing Plaintiff's pay more than her male colleagues holding the same title; responding to Plaintiff's complaints with hostility; permitting Plaintiff to endure escalating harassment despite her complaints; and, eventually, causing Plaintiff's wrongful constructive discharge.

163. In opposing the discriminatory behavior, Plaintiff had a good faith, reasonable belief that she had been or was being subjected to unlawful discrimination on the basis of her gender.

164. These reprisals were a materially adverse employment action in that such actions, whether considered individually or collectively, altered the terms, conditions or privileges of Plaintiff's employment, and/or adversely affected Plaintiff's status as an employee.

165. Further, the retaliatory acts were reasonably likely to deter employees from engaging in protected activity. As such, the retaliatory acts constitute adverse employment actions for the purposes of the EPA.

166. The retaliatory acts when considered collectively were sufficiently severe and/or pervasive

to materially alter the conditions of Plaintiff's employment and create a hostile working environment.

167. Plaintiff's actions are causally connected to her protected activity.

168. Defendant's retaliation would not have occurred but for Plaintiff's participation in a protected activity.

169. As a result of Defendant's violations of the EPA, Plaintiff has suffered damages, including, but not limited to: past and future wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

170. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

171. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

172. Plaintiff has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree that Defendant has violated EPA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

  d. Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

  e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

**COUNT EIGHT**
*Unlawful Interference In Violation of FMLA*

173. Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 72, and further alleges as follows.

174. Defendant Ryder unlawfully interfered with Plaintiff Thompson's right to family medical leave under the FMLA.

175. By nature of Plaintiff's employment with Defendant, Plaintiff was an employee covered by the FMLA and Defendant Ryder was subject to the FMLA's regulations.

176. The FMLA (29 C.F.R. § 825.220(a)) provides: "The FMLA prohibits interference with an employee's rights under the law, and with legal proceedings or inquiries relating to an employee's rights. More specifically, the law contains the following employee protections:

  (1) An employer is prohibited from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act.

  (2) An employer is prohibited from discharging or in any other way discriminating against any person (whether or not an employee) for opposing or complaining about any unlawful practice under the Act…"

177. Defendant Ryder is prohibited under the FMLA from unlawfully interfering with Plaintiff's exercise of her rights to family medical leave to serve as a caregiver to her qualifying relative, namely her husband.

178. Defendant Ryder violated the FMLA and failed to provide Plaintiff the benefits to which

28

she was entitled under the FMLA when it unlawfully interfered with Plaintiff's right to family medical leave by failing to provide Plaintiff with her requested family medical leave despite receiving Plaintiff's requests for same.

179. Plaintiff Thompson qualified for family medical leave by nature of her decades-long employment with Defendant and her husband's qualifying medical condition that required her caregiving services.

180. By nature of Plaintiff's numerous requests for family medical leave, Plaintiff Thompson provided Defendant with adequate notice of her intention to take leave pursuant to the FMLA.

181. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

182. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

183. Plaintiff Thompson has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree that Defendant has violated the FMLA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

    d.  Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

    e.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

**<u>COUNT NINE</u>**
***Retaliation In Violation of the FMLA***

184. Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 72, and further alleges as follows.

185. Defendant Ryder unlawfully interfered with Plaintiff Thompson's rights under the FMLA.

186. The FMLA (29 C.F.R. § 825.220(3)) provides that "All persons (whether or not employers) are prohibited from discharging or in any other way discriminating against any person (whether or not an employee) because that person has—

        (i) Filed any charge, or has instituted (or caused to be instituted) any proceeding under or related to this Act;

        (ii) Given, or is about to give, any information in connection with an inquiry or proceeding relating to a right under this Act;

        (iii) Testified, or is about to testify, in any inquiry or proceeding relating to a right under this Act…"

187. At all times relevant, Plaintiff Thompson acted in good faith and with the objective and subjective belief that violations of the FMLA by Defendant Ryder's employees had occurred.

188. At all times relevant, the unlawful interference by Defendant's employees with Plaintiff's rights and benefits under the FMLA occurred because she opposed a practice made unlawful by the FMLA which would not have occurred but for that opposition.

30

189. Defendant intentionally retaliated against Plaintiff by discharging her for requesting family medical leave pursuant to the FMLA.

190. Plaintiff's constructive discharge constitutes a materially adverse employment action under the FMLA.

191. There is a causal connection between Plaintiff's request for family medical leave and her constructive discharge.

192. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

193. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

194. Plaintiff Thompson has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree that Defendant has violated the FMLA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d. Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e. Grant Plaintiff such additional relief as the Court deems just and proper under the

circumstances.

## COUNT TEN
### *Sex/Gender Discrimination*
### *(Disparate Treatment)*
### *in Violation of Florida Statute Section 760.10(1)(a)*

195. Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 72, and further alleges as follows.

196. The FCRA makes it unlawful for an employer to discriminate against an employee based on that person's sex/gender. § 760.10(1)(a) Fla. Stat. (2020).

197. Florida Statute Section 760.10(1)(a) provides that "[i]t is an unlawful employment practice for an employer … to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

198. The Defendant's adverse and disparate treatment of Plaintiff to which Plaintiff was subjected as described and set forth above, including her constructive discharge, was because of Plaintiff's sex/gender.

199. Defendant is prohibited under the FCRA from discriminating against Plaintiff because of her sex/gender with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

200. Defendant, by and through the conduct of its agent PEREZ, discriminated against Plaintiff based on her gender/sex when it promised Plaintiff the assignment to West Region until a same-titled male employee, Write, was hired. PEREZ then ordered Plaintiff to surrender all personally prepared research, strategies, and portfolios to Write.

201. Defendant, by and through the conduct of its agents PEREZ, HABER, and TELLAM, treated Plaintiff differently than her similarly situated colleagues, including Rafael Write, because of

her sex/gender by denying Plaintiff's request to transfer to Tampa to care for her ailing husband while permitting a male colleague holding the same title, Write, to do the same.

202. Defendant, by and through the conduct of its agents, further discriminated against Plaintiff based on her sex/gender by including canceling/rescheduling one-on-one meetings requested by Plaintiff to discuss the discrimination she experienced; declining to invite Plaintiff and other female employees to lunch and/or work functions; responding to Plaintiff's complaints with hostility; permitting Plaintiff to endure escalating discrimination despite her complaints; intentionally reducing Plaintiff's pay more than her male colleagues holding the same title; and causing Plaintiff's wrongful constructive discharge.

203. The Defendant's disparate treatment was directed to Plaintiff because of her sex/gender.

204. Defendant treated Plaintiff less favorably than similarly situated employees outside her protected class.

205. At all times relevant, Defendant, by and through its agents, intended to unlawfully discriminate against Plaintiff in the terms and conditions of her employment because of her sex/gender and Defendant did unlawfully discriminate against Plaintiff in the terms and privileges of her employment because of her sex/gender in violation of the FCRA.

206. Defendant violated the FCRA by unlawfully discharging and discriminating against Plaintiff based her sex/gender, of which the Defendant was fully aware of.

207. As a result of Defendant's intentional discriminatory and harassing conduct and constructive discharge of Plaintiff's employment in violation of the FCRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.  Plaintiff accordingly

demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

208. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA.

209. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

210. Conduct of Defendant and/or their agents deprived Plaintiff of her statutory rights guaranteed under federal law.

211. Plaintiff has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a.  Adjudge and decree that Defendant has violated FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.  Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.  Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.  Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

### COUNT ELEVEN
*Sex/Gender Discrimination*

*(Hostile Work Environment)*
*in Violation of Florida Statute Section 760.10(1)(a)*

212. Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 72, and further alleges as follows.

213. The FCRA makes it unlawful for an employer to discriminate against an employee based on that person's race and color. § 760.10(1)(a) Fla. Stat. (2020).

214. Florida Statute Section 760.10(1)(a) provides that "[i]t is an unlawful employment practice for an employer…to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

215. Here, Defendant's comments and conduct occurred because of Plaintiff's legally protected characteristic, her sex/gender, and the conduct was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile or abusive.

216. Defendant, by and through the conduct of its agent PEREZ, harassed Plaintiff based on her sex/gender by retracting Plaintiff's promised employment opportunity, the West Region assignment, in favor of a newly hired male employee.

217. Defendant, by and through the conduct of its agents PEREZ, HABER, and TELLAM, further harassed Plaintiff based on her sex/gender by denying Plaintiff's request to transfer to Tampa to care for her ailing husband while permitting a male colleague holding the same title, Write, to do the same.

218. Defendant, by and through the conduct of its agents, also harassed Plaintiff based on her sex/gender by including canceling/rescheduling one-on-one meetings requested by Plaintiff

to discuss her harassment; declining to invite Plaintiff and other female employees to lunch and/or work functions; harshly criticizing Plaintiff's performance, reducing Plaintiff's pay more than her male colleagues holding the same title; responding to Plaintiff's complaints with hostility; permitting Plaintiff to endure escalating harassment despite her complaints; and, eventually, causing Plaintiff's wrongful constructive discharge.

219. Defendant's relentless harassment, ridicule, and humiliation over Plaintiff's objection as described and set forth above, including constant discrimination, harassing comments, and Defendant's failure to take corrective action altered the terms and conditions of Plaintiff's employment, and created a hostile work environment in violation of the FCRA.

220. The hostile work environment and Defendant's adverse and disparate treatment of Plaintiff to which Plaintiff was subjected as described and set forth above, including her constructive discharge, was because of Plaintiff's sex/gender.

221. Defendant violated the FCRA by unlawfully constructively discharging, discriminating against, and harassing Plaintiff based her sex/gender, of which the Defendant was fully aware.

222. The harassment and discrimination directed at Plaintiff was sufficiently severe and pervasive to unreasonably interfere with her physical and/or psychological health, work performance and to create and intimidating, hostile, and offensive working environment.

223. As a result of Defendant's intentional discriminatory conduct in violation of the FCRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

224. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA.

225. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

226. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

227. Plaintiff has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree that Defendant has violated FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d. Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

### COUNT TWELVE
***Age Discrimination***
***(Disparate Treatment)***
***in Violation of Florida Statute Section 760.10(1)(a)***

228. Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 72, and further alleges as follows.

229. The FCRA makes it unlawful for an employer to discriminate against an employee based on that person's age. § 760.10(1)(a) Fla. Stat. (2020).

230. Florida Statute Section 760.10(1)(a) provides that "[i]t is an unlawful employment practice for an employer … to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

231. The Defendant's adverse and disparate treatment of Plaintiff to which Plaintiff was subjected as described and set forth above, including her constructive discharge, was because of Plaintiff's age.

232. Defendant is prohibited under the FCRA from discriminating against Plaintiff because of her age with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

233. Defendant, by and through the conduct of its agent PEREZ, discriminated against Plaintiff based on her age when it promised Plaintiff the assignment to West Region until a similarly situated younger employee, Rafael Write, was hired. PEREZ then ordered Plaintiff to surrender all personally prepared research, strategies, and portfolios to Write.

234. Defendant, by and through the conduct of its agents PEREZ, HABER, and TELLAM, further treated Plaintiff differently than her same-titled colleagues because of her age by denying Plaintiff's request to transfer to Tampa to care for her ailing husband while permitting a younger colleague holding the same title, Write, to do the same.

235. Defendant, by and through the conduct of its agents, further discriminated against Plaintiff based on her age by including canceling/rescheduling one-on-one meetings requested by Plaintiff to discuss the discrimination she experienced; responding to Plaintiff's complaints with hostility; permitting Plaintiff to endure escalating discrimination despite her complaints; and causing Plaintiff's wrongful constructive discharge.

236. The Defendant's disparate treatment was directed at Plaintiff because of her age.

237. Defendant treated Plaintiff less favorably than similarly situated employees outside her protected class.

238. Conduct of Defendant through by and through its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

239. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

240. Plaintiff Thompson has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a.  Adjudge and decree that Defendant has violated FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.  Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.  Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.  Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and

disbursements of action;

e.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

**COUNT THIRTEEN**
*Retaliation in Violation of Florida Statute Section 760.10(7)*

241. Plaintiff realleges and incorporates by reference each allegation contained in paragraph 1 through 72, and further alleges as follows.

242. The FCRA prohibits retaliation against an employee for opposing conduct which would violate the terms of the FCRA. § 760.10(7), Fla. Stat. (2020).

243. Florida Statute Section 760.10(7) provides that "[i]t is an unlawful employment practice for an employer to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."

244. Plaintiff opposed the discriminatory conduct of Defendant when she complained to PEREZ, HABER, and Human Resources about the discrimination and increasingly hostile work environment that she was subjected to as described above.

245. At all times relevant, the unlawful retaliation by Defendant towards Plaintiff in the terms and conditions of her employment occurred because she opposed a practice made unlawful by the FCRA which would not have occurred but for that opposition.

246. At all times relevant, Defendant's agents/supervisors acted intentionally and with reckless disregard of Plaintiff's rights protected by the FCRA.

247. At all material times, the Defendant's agents/supervisors exhibiting discriminatory and harassing conduct against Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

248. Defendant's agents/supervisors PEREZ and HABER retaliated against Plaintiff by continuing to subject Plaintiff to harassment and discrimination, harshly criticizing Plaintiff's work performance, discouraging Plaintiff from pursuing her complaints, and ultimately causing Plaintiff's constructive discharge after she complained of and reported the discrimination and harassment she experienced.

249. As a direct and proximate result of Defendant's intentional retaliatory conduct in violation of the FCRA, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

250. Conduct of Defendant and/or their agents deprived Plaintiff of her statutory rights guaranteed under state law.

251. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

252. Plaintiff Thompson has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree that Defendant has violated FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined

at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.   Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e.   Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable before a jury.

Dated: September 21, 2021

**DEREK SMITH LAW GROUP, PLLC**
701 Brickell Avenue, Suite 1310
Miami, Florida 33131
P.: (305) 946-1884

Lauren Tobin, Esq.
Fla. Bar No. 1024850
Lauren@dereksmithlaw.com

*Attorneys for Plaintiff Penny Thompson*